UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



UNITED STATES OF AMERICA,

v.                                          CRIMINAL NO. 2:11cr34

AHMED MUSE SALAD,

ABUKAR OSMAN BEYLE, AND

SHANI NURANI SHEIKH ABRAR,

　　Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court upon the Defendants Joint Motion to Strike Non-Statutory Aggravating Factor No. 2, ECF No. 497, and Joint Motion to Strike Non-Statutory Aggravating Factors No. 3, 5, and 6 and Motion for a Bill of Particulars as to Non-Statutory Factor No. 4, ECF No. 502 ("Motions"), filed on September 17, 2012. The United States opposed the Motions in its Consolidated Response ("Response"), filed on October 17, 2012. On November 1, 2012, the Defendants filed a Reply as to Non-Statutory Aggravating Factor No. 2, ECF No. 523, and a Reply as to Non-Statutory Aggravating Factors No. 3, 5, and 6, ECF No. 529.[1] These matters are now ripe for review.

---

[1] This Reply focuses almost exclusively on the law related to accessory liability. Although the caption makes no mention of the Bill of Particulars, the Defendants do renew their request for "more particular information" as to Factor Four. See Reply at 2, ECF No. 529.

## I. PROCEDURAL HISTORY

The Defendants were named in a Superseding Indictment, filed July 8, 2011, charging them with various offenses related to the seizure of the sailing vessel Quest in February, 2011, and the deaths of four Americans on board. The Superseding Indictment alleged twenty-six (26) counts and nine (9) special findings, twenty-two (22) of which are capital offenses.

Pursuant to 18 U.S.C. § 3593(a), the United States filed a Notice of Intent to Seek a Sentence of Death ("Notice") as to each Defendant on April 17, 2012.[2] The Notice indicated that, in the event the Defendant is found guilty of an offense punishable by death, the United States will first seek to prove two statutory threshold intent findings, pursuant to 18 U.S.C. § 3591(a)(2)(C) and (a)(2)(D). Next, the United States will seek to prove one of three (3) statutory aggravating factors, pursuant to 18 U.S.C. § 3592(c)(1), (c)(5), and (c)(16). Finally, if and only if the United States is successful in proving at least one threshold intent factor and at least one statutory aggravating factor, it will seek to prove additional non-statutory aggravating factors. See 18 U.S.C. §§ 3592-3593.[3]

---

[2] All three Notices were filed under seal, and unsealed on May 1, 2012. See ECF Nos. 448; 451; 454.

[3] Defendants Abrar and Beyle were each charged with six (6) non-statutory aggravating factors. Defendant Salad was charged with the same six (6) factors, plus an additional seventh factor

2

This final group of non-statutory factors are at issue in the present Motions. The Defendants move to strike four of these factors: Factor Two, alleging that the Defendants "made use of a minor individual (a person under the age of 18) to participate in the acts of hijacking and piracy charged in the Superseding Indictment"; Factor Three, alleging that the Defendants "engaged in a course of conduct that threatened and directed violence towards members of the United States Armed Forces"; Factor Five, alleging that the Defendants "made threats of violence and death to [the four American victims] over a protracted period of time"; and Factor Six, alleging that the Defendants "displayed a callous disregard for human life by killing the victims in an especially wanton and gratuitous manner."

The Defendants also move for a Bill of Particulars as to Factor Four, which alleges that the Defendants "engaged in at least one prior act of piracy or attempted piracy." Notice at 4. The United States objects to each of these requests.

## II. LEGAL STANDARDS

Aggravating factors in capital sentencing schemes must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephens, 462 U.S. 862, 877 (1983); accord

---

asserting a lack of remorse, based on his "boastful statements about the murders." See Notice at 4, ECF No. 448.

3

Lewis v. Jeffers, 497 U.S. 764, 776 (1990) ("We have reiterated the general principle that aggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not.").

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591-98, provides for consideration of non-statutory aggravating factors only at a late stage of trial. This capital case is arranged in three phases. The first phase is the guilt/innocence phase. Before the government may present evidence as to any sentencing factor, it must first prove, beyond a reasonable doubt, that the Defendant is guilty of a capital offense. Id. § 3591(a)(2). If the government proves guilt, then the case proceeds to the eligibility phase, at which the government must prove, again beyond a reasonable doubt, at least one threshold intent factor and one statutory aggravating factor. Id. §§ 3591(a)(2), 3593. Only if the government satisfies its burden at both the guilt/innocence phase and the eligibility phase may the case proceed to the third and final phase: selection. Id. §§ 3591(a), 3592, 3593. During the selection phase, the jury may hear evidence concerning the non-statutory aggravating factors for which the government has provided notice. Id. The Defendants' objections, therefore, concern only this third and final phase of trial.

Aggravating factors serve to ensure that a death sentence is imposed only after thorough, particularized consideration of the defendant, the facts of the offense, and the defendant's role in that offense. Tuilaepa v. California, 512 U.S. 967, 972 (1994). In order to comport with the Eighth Amendment, aggravating factors must not be "vague, overbroad, duplicative or irrelevant." United States v. Grande, 353 F. Supp. 2d 623, 630 (E.D. Va. 2005) (citing Tuilaepa, 512 U.S. at 973; Arave v. Creech, 507 U.S. 463, 474 (1993); United States v. Tipton, 90 F. 3d 861, 899 (4th Cir. 1996)).

Factors may be struck as vague only if they lack "a common-sense core of meaning" comprehensible to a sentencing jury. Tuilaepa, 512 U.S. at 973 (quoting Jurek v. Texas, 428 U.S. 262, 279 (1976)) (internal quotation marks omitted). Factors need not demonstrate "mathematical precision" to survive vagueness review. Id. A factor is overbroad when "the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty." Arave, 507 U.S. at 474. The relevance inquiry examines whether the factor bears a logical relationship to the question whether the particular defendant should receive the death penalty, or some lesser sentence. See United States v. Friend, 92 F. Supp. 2d 534, 543-44 (E.D. Va. 2000). Finally, the court must ensure that the evidence at sentencing meets a heightened standard of

5

reliability, and that the probative value of the evidence outweighs its prejudicial effect. See 18 U.S.C. § 3593(c); Lockett v. Ohio, 438 U.S. 586, 604 (1978). This court has recognized the importance of admitting enough evidence to enable the jury to reach an informed, individualized determination as to the proper sentence, particularly in capital cases. See United States v. Rivera, 405 F. Supp. 2d 662, 668-69 (E.D. Va. 2005) (noting the "inherent tension in capital cases--between reliability and providing the jury with as much information as possible to make an individualized determination of whether the defendant merits the death penalty").

The court reviews motions to strike non-statutory factors for compliance with the foregoing standards, and does not, at this early stage, examine the evidence that may tend to establish the factors. United States v. Higgs, 353 F.3d 281, 325 ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it."). With this legal framework in place, the court evaluates each request for relief in turn.

### III. OBJECTIONS AND ANALYSIS

#### A. Factor Two: Use of a Minor

The Defendants object to this factor on two grounds. First, the Defendants argue that the factor requires the government to

6

prove that the Defendants engaged in some affirmative act to "use" the minor. Principles of accomplice liability, the Defendants claim, cannot apply if the Defendants themselves did not directly employ, solicit, command, or direct the minor. Second, the Defendants argue that the factor, in any event, lacks the level of relevance and reliability required to pass constitutional muster.

Both arguments fail. The first claim goes to the weight and sufficiency of evidence, which the government has not yet presented. As such, striking Factor Two at this juncture is premature.[4] The court cannot say that Factor Two lacks a "common-sense core of meaning." Juries are certainly capable of understanding the basis for this factor, so it is not impermissibly vague. It is also relevant because, if proven beyond a reasonable doubt, it would tend to show that the Defendant (or Defendants) exploited a vulnerable member of society in furtherance of a violent crime. The presence of "use of a minor" in other sentencing contexts compels the conclusion that the factor is indeed germane to the question whether a defendant should face the death penalty. See, e.g., 18 U.S.C. § 3592(d)(7) ("Using minors in trafficking").

---

[4] The court takes no position, at this time, on the Defendants' legal argument about the definition of "use" in this context. Should the case proceed to the selection phase, the court will craft jury instructions to provide guidance on the law.

## B. Factor Three: Violence Towards the U.S. Armed Forces

The Defendants challenge this factor on several grounds: that the evidence does not support the claim that the Defendants were the aggressors in any confrontation with the Armed Forces; that the Notice did not allege an intent to threaten any member of the Armed Forces; that the factor is both vague and overbroad; and that it is duplicative with Statutory Aggravating Factor Two, which charges the Defendants with creating "a grave risk of death to 1 or more persons in addition to the victims of the offenses." See Mot. at 4-5, ECF No. 502.

The first two objections are easily dismissed. The court will not strike a factor based on alleged evidentiary deficiency or the Defendants' allocation of blame for the violent escalation of force. The factor is not vague; the core of meaning is evident from the face of the Notice. Nor is Factor Three impermissibly overbroad. Overbreadth analysis examines whether the circumstances would apply to every capital defendant, not whether the factor identifies the precise service members who were threatened with violence. Threats to the Armed Forces are not common in capital cases, so this factor cannot be said to be overbroad.

The Defendants cite no law in support of their final allegation that Non-Statutory Factor Three is duplicative of Statutory Factor Two. See Mot. at 5. The government does provide

8

a detailed legal and factual justification for alleging both separate factors. In short, it maintains that the "other persons" in Statutory Factor Two include the co-conspirators aboard the Quest and not the members of the Armed Forces on board USS Sterrett or other vessels in the carrier strike group. Resp. at 92-93. Because the Defendants have offered no legal grounds to challenge this Factor, and because the court agrees that the government states a plausible distinction, the court declines to strike Factor Three.

## C. **Factor Four: Prior Acts of Piracy**

The Defendants move the court to order the United States to provide a Bill of Particulars detailing "the vessel or vessels that each defendant pirated or made attempts against in order to allow for proper investigation and preparation." Mot. at 7. As outlined above, however, the United States is not required to detail such evidence in the Notice. "The court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f) (emphasis added). A Bill of Particulars is an appropriate remedy "to enable [the defendant] to prepare for trial, [and] avoid or minimize the danger of surprise at time of trial." United States v. Dulin, 410 F.2d 363 (4th Cir. 1969) (per curiam). The court identifies no such risk of unfair surprise. The United States represented to the court that "Defendants have or will have within their possession the basis for all of the evidence that

9

the government may offer at the penalty phase." Resp. at 96. If the government provides that information to the Defendants at such a late point that unfair surprise is likely to result, the court will address an appropriate objection at that juncture.[5]

The Defendants also challenge the sufficiency of evidence based on the discovery to date. Once again, the court declines to conduct a premature evidentiary analysis in evaluating the constitutional sufficiency of non-statutory aggravating factors.[6]

D. **Factor Five: Threats of Violence and Death**

The Defendants briefly argue that this factor is vague for lack of specificity, and that the "verbal threats, if any, could [not] have been understood by the victims. . . . [and therefore] could not have caused them to be afraid." Mot. at 5-6. The Notice was not unconstitutionally vague, as it was not required to set forth the allegations in the level of detail that the Defendants request. The Defendants cite nothing in support of their startling suggestion that the victims could have had no reasonable basis for fear. In any event, the argument raises evidentiary challenges that are premature, so the Motion is, therefore, **DENIED** at this juncture.

---

[5] The court notes that agreed Discovery Orders, with appropriate deadlines, are in place. See ECF Nos. 256 (Salad); 258 (Beyle); 260 (Abrar); see also Order, Nov. 19, 2012, ECF No. 539 (confirming agreed Discovery Orders).

[6] See supra note 5.

## E. Factor Six: Callous Disregard for Human Life; Wanton and Gratuitous Manner of Killing

The Defendants characterize Factor Six as "facially unconstitutional" and ask the court to strike it. In support, they cite the seminal Supreme Court case, Maynard v. Cartwright, 486 U.S. 356 (1988), and contend that language like that in Factor Six requires proof of torture in order to survive constitutional scrutiny. Mot. at 6. The Defendants misread Maynard and its progeny. Although similar language, standing alone, has been held to be unconstitutionally vague, the Maynard Court itself took pains to emphasize that proof of torture is not required in every case. Maynard, 486 U.S. at 364-65 ("We do not, however, agree that the Court of Appeals imposed this requirement [of torture]. It noted cases in which such a requirement sufficed to validate an otherwise vague aggravating circumstance, but it expressly refrained from directing the State to adopt any specific curative construction of the aggravating circumstance at issue here.").

Even if this court were to find the language impermissibly vague, the Fourth Circuit has repeatedly permitted district courts to cure vagueness with proper jury instructions. See Frye v. Lee, 235 F.3d 897, 902-03 (4th Cir. 2000); Fisher v. Lee, 215 F.3d 438, 458-59 (4th Cir. 2000). Because the language is not per se vague; because an evaluation of the evidence is improper

at this point; and because the court retains less severe options for curing alleged deficiencies, if and when such evidence is presented at the selection phase, this Motion is **DENIED**.

## IV. CONCLUSION

The court declines to strike the Non-Statutory Aggravating Factors at this juncture, and declines to order the United States to produce a Bill of Particulars as to Factor Four. For the foregoing reasons, both of the Defendants' Motions are **DENIED**. The Clerk shall forward a copy of this Memorandum Opinion and Order to counsel for each Defendant, and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 21, 2012